ORIGINAL

**ANTHONY E. COLOMBO JR.**
California State Bar No. 218411
The Senator Building
105 West "F" Street, Suite 310
San Diego, California 92101
Telephone: (619) 236-1704

Attorney for Deric Williams

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q.HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>**DERIC WILLIAMS,**<br>Defendant. | Case: 07cr2985-WQH<br><br>Date: December 7, 2007<br>Time: 1:00 p.m.<br><br>**NOTICE OF MOTION AND MOTION TO REVOKE MAGISTRATE JUDGE'S ORDER OF DETENTION** |

TO: CAROL C. LAM, UNITED STATES ATTORNEY, AND
TIMOTHY SALEL, ASSISTANT UNITED STATES ATTORNEY:

Deric Williams, by and through his counsel, Anthony E. Colombo Jr., pursuant to 18 U.S.C. § 3145(b), requests that this Court revoke the order of detention imposed by the Honorable Cathy Ann Bencivengo, United States Magistrate Judge for the Southern District of California.

This motion is based upon the instant motion and notice of motion, the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may come to this Court's attention prior to or during the hearing of this motion.

Respectfully submitted,

Dated: December 3, 2007

**ANTHONY E. COLOMBO JR.**
Attorney for Deric Williams

ORIGINAL

**ANTHONY E. COLOMBO JR.**
California State Bar No. 218411
The Senator Building
105 West "F" Street Suite 310
San Diego, California 92101
Telephone: (619) 236-1704

Attorney for Deric Williams

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>**DERIC WILLIAMS,**<br>Defendant. | ) | Case: 07cr2985-WQH<br><br>**STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN <u>SUPPORT OF MOTION</u>** |

**I.**

**STATEMENT OF FACTS**

On or about November 7, 2007, Deric Williams was arrested in the Southern District of California and charged with violating Title 18 U.S.C. §§ 841(a)(1), and 846, Conspiracy to Distribute Methamphetamine. On November 7, 2007, Mr. Williams was arraigned on the one count indictment and entered a plea of not guilty. At arraignment, the government requested that Mr. Williams be detained without bail on the basis of "flight risk." On that same day, Mr. Williams sent, via facsimile and traditional mail, a letter to the government requesting that they comply with their disclosure obligation pursuant to Title 18 U.S.C. § 2518(9), and turn over prior to the detention hearing any wiretap applications and orders. The government did not comply with this disclosure obligation as it was represented they were not going to rely upon any evidence derived from electronic surveillance to support their request for detention.

The detention hearing was held on November 15, 2007, before Magistrate Judge Cathy Ann

Bencivengo. At the hearing, when discussing the weight of the evidence, the government stated that there were numerous calls that supported their position that Mr. Williams was involved in a conspiracy to distribute a controlled substance. RT at 2-3.[1] The government also argued that because Mr. Williams resided part-time in Mexico, had employment linked to Mexico, and had numerous prior convictions, although admittedly dated, he was a risk of flight. RT at 3-5.

Mr. Williams requested that at the outset the court ignore the government's proffer in regard to wiretap surveillance as they failed to comply with 18 U.S.C. § 2518(9). RT at 5-6. Mr. Williams then argued that a $100,000.00 dollar bond was appropriate because of his life-long contacts in Southern California. RT at 6-10. After listening to both parties, Judge Bencivengo stated "I think this is a very close call," and ordered the detention of Williams.[2] RT at 12. In articulating her reasoning, Judge Bencivengo did not specifically state that any reference to wiretap conversations would be ignored, and found that the weight of the evidence was "strong." RT at 12.

Judge Bencivengo then found that because Mr. Williams has employment in Mexico, resided in Mexico, and his closet personal relationship was with someone in Mexico, detention was appropriate. See RT at 12.

This motion for revocation of the detention order arises from the detention hearing proceeding. It is Mr. Williams' contention that the detention order must be revoked and bail granted as: 1) in clear violation of Title 18 U.S.C. § 2518 subdivision 9, and over Mr. Williams' objection, the magistrate court relied upon the government's proffer which was based on wiretap surveillance, 2) several of the factors relied upon by the magistrate court to justify detention were erroneous, and finally 3) in evaluating the factors under Title 18 U.S.C. § 3142 subdivision (g), there is a combination of conditions that can be set to ensure Mr. Williams' future presence in court.

## II.

## STANDARD OF REVIEW

This Court applies a *de novo* standard of review to the findings and order of detention by the magistrate judge. United States v. Koenig, 912 F.2d 1190, 1192-93 (9th Cir. 1990) ("[The district court]

---

[1] The transcript from the detention hearing is attached as Exhibit A, and is cited herein as "RT."

[2] The final Detention Order is attached as Exhibit B.

should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference. If the performance of that function makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate.").

**III.**

**THERE ARE A COMBINATION OF CONDITIONS THAT COULD BE SET WHICH WOULD ASSURE MR. WILLIAMS' APPEARANCE AT FUTURE PROCEEDINGS**

**A. The Law Favors Release of Mr. Williams Pending Trial.**

The right of the accused to be released pending trial is a firmly rooted tenet of our criminal justice system. The Supreme Court has repeatedly affirmed the right of persons charged with crimes to be released with bail. In Stack v. Boyle, 342 U.S. 1 (1951), the Court strongly stated that:

> federal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.

Stack, 342 U.S. at 4.

In 1984, Congress passed a Bail Reform Act (which superceded its predecessor, the Bail Reform Act of 1966). In United States v. Salerno, 481 U.S. 739, 750 (1987), the Court held that the portions of the 1984 Act permitting detention withstood a facial challenge under both the Due Process Clause and the Eighth Amendment because of the extensive procedural safeguards the Act guaranteed, including "a full-blown adversary hearing" by a "neutral decision maker." These procedural safeguards as well as the standards for detention will be addressed in greater detail below.

Notwithstanding the passage of the Bail Reform Act in 1984, the historical importance of pretrial release to our criminal justice system remains of critical importance:

> [I]t is well to remember the magnitude of the injury that pretrial detention inflicts and the departure that it marks from ordinary forms of constitutional governance. Executive power to detain an individual is the hallmark of the totalitarian state. Under our Constitution the prohibition against excessive bail, the Due Process Clause of the Fifth Amendment, the presumption of innocence --indeed, the fundamental separation of powers among the Legislative, the Executive and the Judicial Branches of Government -- all militate against this abhorrent practice. Our historical approach eschewing detention prior to trial reflects these concerns . . . .

United States v. Montalvo-Murillo, 495 US 711, 723-24 (1990) (Stevens, J., dissenting). The Bail Reform Act of 1984 has thus far withstood Constitutional challenges only because the Supreme Court found that "Congress carefully prescribed **stringent procedures** to govern this **extraordinary departure** from the guarantee of liberty normally accorded to presumptively innocent individuals." Montalvo-Murillo, 495 US at 724-25 (Stevens, J., dissenting)(emphasis added).

Our Circuit has also strongly affirmed the idea that "federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail." United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985) (reversing district court's order of detention based on risk of flight of an Iranian citizen, who maintained large foreign bank accounts where the majority of the deposits were made by Iranian Government, who was charged with exporting military items without a license, and who had been warned that his activities were illegal to do so by both U.S. Customs and the FBI). Our Court has firmly stated that "[o]nly in rare circumstances should release be denied." Id. The argument is even more applicable in the instant case given the length of time it is likely to take for this case to resolve. Simply put, any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." Id. It is within this framework -- with an acknowledgment of the critical role pretrial release plays within our system of criminal justice -- that Mr. Williams asks this Court to revoke the magistrate judge's detention order.

**1. Standard for Detention Based on Risk of Flight.**

It is the government who "must establish risk of flight by a clear preponderance of the evidence" and who must demonstrate that there is no condition, or combination of conditions, that would reasonably assure Mr. Williams' appearance at future proceedings if he is released on bond. United States v. Motamedi, 767 F.2d at 1406-07. The conditions to be set pursuant to the "reasonably assure" language of 18 U.S.C. § 3142 are not equivalent to a "guarantee" of the accused's presence for future proceedings. United States v. Fortna, 769 F.2d 243, 250 (5th Cir. 1985); United States v. Portes, 767 F.2d 758, 764 n. 7 (7th Cir. 1985); United States v. Orta, 760 F.2d 887, 891-92 (8th Cir. 1985).

**2. Rebuttable Presumption.**

The government has argued that Mr. Williams is charged with a Controlled Substances Offense that carries a term of not less than ten years imprisonment, and therefore "pursuant to 18 U.S.C. § 3142(e), a rebuttable presumption arises that there is no condition or combination of conditions that can assure the

defendant's appearance as required." Exhibit A at 2.

As previously described by then Circuit Judge Breyer, the "presumption" provision of 18 U.S.C. § 3142(e) serves only to "shift[] the burden of production" to the defendant, not the burden of "persuasion." United States v. Jessup, 757 F.2d 378, 389 (1st Cir. 1985) (overruled on other grounds); United States v. Chen, 820 F.Supp. 1205 (N.D.Cal. 1992). Once the defendant comes forward with some evidence, the presumption is just one of many factors to be considered by the court pursuant to 18 U.S.C. § 3142(g). Id. The presumption never removes from the government the burden of proving by a preponderance of the evidence that no condition or combination of conditions can reasonable assure the defendant's appearance at future proceedings.

**B. An Analysis of the Factors Required to be Considered by 18 U.S.C. § 3142(g) Favors Release.**

**1. The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.**

As noted above, Mr. Williams has been charged in an indictment with conspiracy to distribute methamphetamine. Mr. Williams' alleged role was that of a courier. RT at 2.

**2. The weight of the evidence against the person.[3]**

Based on the government's proffer, Judge Bencivengo viewed the weight of the evidence against Mr. Williams as strong. RT at 12. Mr. Williams is at a disadvantage at this point to address the merits of the government's argument simply because he has not to date received one page of discovery. It is difficult to refute the government's interpretation of the evidence without any discovery to evaluate. Mr. Williams urges this Court to consider when evaluating the weight of the evidence that "[n]othing in [] section [3142] shall be construed as modifying or limiting the presumption of innocence." Title 18 U.S.C. § 3142(j) (2006).

Regardless of how substantial the evidence might be, the magistrate court erroneously relied

---

[3] The Ninth Circuit has repeatedly held that this is the least important factor to be considered by this Court in determining bail. United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986)("Section 3142 neither requires nor permits a pretrial determination that the person is guilty; the evidence of guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community."); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991). Mr. Williams does not address the merits of the evidence against him simply because to date he has not been provided with any discovery.

upon the government's proffer which was based upon wiretap intercepts. The evidence proffered by the government was based on information either overheard, or derived from, wiretap surveillance. Over Mr. Williams' objection the magistrate court relied upon the proffer of the government. Mr. Williams objected to the magistrate judge's reliance on the information proffered by the government which was derived from wiretap surveillance because the government had refused to comply with Title 18 U.S.C. § 2518(9). Pursuant to § 2518 subdivision 9:

> The contents of any wire, oral, or electric communication intercepted pursuant to this chapter or evidence derived therefrom ***shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application under which the interception was authorized or approved.***

Title 18 U.S.C. § 2518(9) (2006) (emphasis added).

"'Proceeding' is intended to include all adversary type hearings." The Senate Report, p. 105; U.S. Code Cong. & Admin.News, p. 2195. The disclosure requirement is so that an indicted party "may be in a better position to attack the validity of the initial order" at the adversarial hearing. United States v. Chun, 503 F.2d 533, 537 n. 6.

Although it is not his obligation, the undersigned counsel, through letter to the assigned United States Attorney Timothy Salel, requested that he comply with the requirements of § 2518 subdivision 9. The government did not comply, but yet still proffered the evidence at the detention hearing. More importantly, despite the plain reading of the statute which specifically requires the court not to consider such evidence, the magistrate court relied on the proffered wiretap evidence over Mr. Williams' objection. It was clear error for the magistrate court to rely upon this evidence. The magistrate court should have either refused to consider the government's proffer, or ordered the government to comply with § 2518, and continued the detention hearing. It is absolutely unfair, and more importantly, a violation of Mr. Williams' due process and fair trial rights, for government counsel as well as the magistrate court to simply ignore a procedural requirement mandated by Congress. Despite the plain language of the statute, and the procedural protection required by Congress and endorsed by the Supreme Court, the magistrate court simply ignored its obligation to enforce, and follow the law. For that reason alone, the magistrate judge's detention order should be revoked.

**(b). Erroneous Reliance on No Employment in the U.S. and No Significant Community Ties .**

In determining that detention was appropriate, the magistrate court relied upon its conclusion that "[Mr. Williams] has no steady employment in [the] U.S. [and] does not have any significant community ties." Detention Order at 1-2. Both conclusions are erroneous.

First, although Mr. Williams' employment is unconventional as it involves "extreme sports," he has been steadily employed in the United States for his adult life. For the last 20 years, Mr. Williams has lectured and taught Brazilian Jiu- Jitsu to law enforcement agencies. Between 1995 and 1999, Mr. Williams competed professionally in the Ultimate Fighting Challenge as a mixed martial artist in the super heavy weight division. Mr. Williams was undefeated in that weight class in "cage combat." Since 1999, Mr. Williams has been training up and coming fighters. For the last year, Mr. Williams has been teaching mixed martial arts at the Ultimate Fighting Centers in Palm Springs, California, and Playas De Tijuana, in Baja, California. In addition to training young fighters in Southern California, and Mexico, Mr. Williams has been working with Yamaha Motor Sports as a salesman for motorcycle parts for 18 years. For eight of those years, Mr. Williams was a competitor in SuperBike motor cross races as a member of Yamaha's race team. Prior to his arrest, Mr. Williams was working as a mechanic for Grave's Yamaha's race team. Simply because Mr. Williams' for the past year maintained partial employment in Mexico does not mean that he is a flight risk. Mr. Williams' employment may not be traditional as it involves extreme sports, but he has been employed in the United States for his entire adult life.

Second, Mr. Williams was born, raised, and has lived in Southern California his entire life. All of his community ties are in Southern California. Although Mr. Williams' parents are deceased, Mr. Williams brothers, Jay, and Jarrod, and his sister Sharon, live in Southern California. Mr. Williams' brother Jarrod is a City Inspector for the County of Los Angeles, and is living in North Hollywood. His brother Jay lives and works in Palm Springs, California, and his sister Sharon is a housewife married with two children and living in San Juan Capistrano. Mr. Williams' long time friends Trent Bowen, Tammy Ruiz, Roni Duran, and Chris Duran, all live in California and are all willing to sign on to a bond for Mr. Williams. Mr. Bowen is a retired armored car driver. Ms. Ruiz is a manager at a process serving company R&N. Mr. Duran owns an auto upholstery workshop, "CoachWorks." Mr. Duran's son, Chris, is a manager for FedEx, and has been for the last eight years. The one tie to Mexico Mr. Williams maintains

is his girlfriend, Leticia Gonzalez, who is a legal permanent resident in the United States living in San Diego but who visits regularly with her family in Tijuana. Certainly having one tie to Tijuana does not outweigh the community ties Mr. Williams has established over the course of his life.

**3. The history and characteristics of the person.**

Section 3142(g)(3) lists a number of factors regarding the history and characteristics of a person to be considered in making the release determination. These factors are listed and explored below, almost all mitigate in favor of setting bail.

**(a). The person's character.**

Mr. Williams is a 48 year old United States citizen. He was born and raised in Southern California, and has lived in Southern California his entire life. He has maintained employment with the same employer for 18 years. He is the father of two children, and is loved by them both.

**(b). Physical and mental condition.**

Mr. Williams is physically and mentally fit. He suffers from no serious diseases or health conditions that would hinder his ability to travel to San Diego for all further court proceedings in this case.

**(c). Family ties.**

All of Mr. Williams' family live in Southern California. Clearly, the fact that Mr. Williams' entire family lives and works in Southern California mitigates in favor of setting bail.

**(d). Employment and Education.**

Mr. Williams attended elementary school, grammar school, and high school in Long Beach, California. At a very young age, Mr. Williams began training in Brazilian Jiu Jitsu. For the last 20 years, Mr. Williams has lectured and taught Brazilian Jiu Jitsu to law enforcement agencies. Between 1995, and 1999, Mr. Williams competed professionally in the Ultimate Fighting Challenge as a mixed martial artist. For the last year, Mr. Williams has been teaching mixed martial arts at the Ultimate Fighting Centers in Palm Springs, California and Playas De Tijuana, in Baja, California. In addition, Mr. Williams has been working with Yamaha Motor Sports as a salesman for motorcycle parts, and as a competitor in SuperBike races as a member of Yamaha's race team for 18 years.

Although, Mr. Williams' employment is unconventional as it involves "extreme sports," he has been steadily employed for his adult life, and therefore, this mitigates in favor of bail.

**(e). Financial resources.**

As mentioned above, Mr. Williams has worked in the extreme sports industry sacrificing income for what he truly enjoys. His income is therefore modest. However, Mr. Williams' financial resources are such that returning to San Diego will not be a problem as he will only be living in Palm Springs, California.

**(f). Length of residence in the community.**

Mr. Williams has lived in Southern California his entire life. Only over the past year has Mr. Williams been living in Tijuana part time, and living in Palm Springs part time. Surely, however, one year living part time in Tijuana does not over shadow ***47 years*** of living in the United States in Southern California.

**(g). Community ties.**

As noted above, Mr. Williams is a life-long resident of Southern California. His employment, as well as all of his family and friends, are in Southern California.

**(h). Past conduct.**

Mr. Williams' past conduct does include several convictions. However, Mr. Williams has never missed a court appearance, and is considered a good father, and a good brother.

**(i). History relating to drug or alcohol abuse.**

Mr. Williams has no history of drug or alcohol abuse.

**(j). Criminal history.**

Mr. Williams' most recent criminal conviction was for a misdemeanor and is almost 10 years old. The probation violations associated with this conviction are for failures to complete public work service within the allotted time. However, the violations were simply errors as Mr. Williams had completed his public work service. The next most recent conviction is a felony from 1994, a conviction almost 14 years old. Notably, there are no failures to appear, or probation violations associated with this conviction. Mr. Williams' remaining criminal history consists of several misdemeanor convictions that are ***30 years*** old. Although the government and the court took note of Mr. Williams' conviction in 1978 for Escape, the conviction is 30 years old, and Mr. Williams was 18 at the time. Mr. Williams' criminal history is simply not of the type that supports he is a flight risk. To the contrary, as there are no failures to appear or bench

warrants in connection with any of his cases, his criminal history proves that he is *not* a flight risk and will attend his court appearances as ordered.

**(k). Record concerning appearance at court proceedings.**

Mr. Williams has never had a failure to appear on any of his cases.

**(l). Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.**

Mr. Williams was not on probation, parole, or supervised release at the time of his arrest.

**C. <u>Mr. Williams is Not a Risk of Flight and Should be Granted Release on the Following Conditions.</u>**

Given that Mr. Williams has lived his entire life in Southern California, is a United States citizen, has no serious prior convictions, and is not in this case being accused of any violent acts, the detention order should be revoked and bail should be set. Mr. Williams proposes that in order to ensure his future presence in court that this Court set a $100,000.00 bond, $75,000.00 secured by real property, $25, 000.00 secured by the signatures of three financially responsible adults, along with a condition of electronic monitoring, and a 9 p.m. to 6 a.m. curfew.

## IV.

## <u>CONCLUSION</u>

A review of the factors enumerated in Section 3142(g) reveals that the government cannot meet its burden of showing by a preponderance of the evidence that Mr. Williams is a risk of flight. Mr. Williams has proposed conditions of release, that entail strict supervision and would reasonably assure his appearance to all future court appearances. Accordingly, this Court should revoke the order of detention, and set a bail as requested. For the foregoing reasons, Mr. Williams respectfully requests that this Court grant his motion revoking the detention order.

Respectfully Submitted,

[signature]

Dated: December 3, 2007

**ANTHONY E. COLOMBO JR.**
Attorney for Mr. Williams