# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DERIC WILLIAMS,<br><br>Defendant. | ) | Case No. 07CR2985-WQH<br><br>San Diego, California<br><br>Thursday,<br>November 15, 2007<br>9:30 a.m. |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CATHY ANN BENCIVENGO
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | JOSEPH GREEN, ESQ.<br>Assistant United States<br>Attorney<br>880 Front Street<br>San Diego, California 92101 |
| For the Defendant: | ANTHONY E. COLOMBO, ESQ.<br>105 West F Street, Third Floor<br>San Diego, California 92101<br>(619) 236-1704 |
| Transcript Ordered by: | ANTHONY E. COLOMBO, ESQ. |
| Transcriber: | Carol Abbott<br>Echo Reporting, Inc.<br>6336 Greenwich Drive<br>Suite B<br>San Diego, California 92122<br>(858) 453-7590 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

SAN DIEGO, CALIFORNIA THURSDAY, NOVEMBER 15, 2007 9:30 A.M.

--oOo--

(Call to order of the Court.)

THE CLERK: Your Honor, we're back on the record as to matter number 14 on the calendar, regarding Defendant number 7, 07-CR-2985-WQH, United States of America v. Deric Williams, on calendar for detention hearing.

MR. COLOMBO: Anthony Colombo on behalf of Mr. Williams, who is in custody and will be present shortly, your Honor.

THE COURT: Thank you.

MR. GREEN: Good morning, your Honor. Joseph Green, once again, for the United States.

MR. COLOMBO: Mr. Williams is now present in custody, your Honor.

THE COURT: Thank you. Are you ready, Mr. Colombo?

MR. COLOMBO: Yes.

THE COURT: All right, Mr. Williams, good morning. This is the Government's motion to detain you based on risk of flight. Mr. Green.

MR. GREEN: Thank you, your Honor. Your Honor, this is co-defendant in the same case that we had just handled earlier. I'm going to summarize some of the basic information again. This is a case in which the Government's

moved for detention based on risk of flight. The facts that are going to be proffered we'll establish under 18 USC 1341(g) by a preponderance of the evidence that there's a risk of flight and that no conditions can be adequately -- will adequately assure the presence of Mr. Williams.

There's a presumption in this case as well, your Honor. In the indictment filed October 31st in this District, Mr. Williams was charged with eight others in a conspiracy. If you're breaking down the roles of the individuals, Mr. Williams is a drug courier who picks up drugs in Mexico and delivers them to the United States.

Although the Government can't disclose the contents of the calls involving Williams, there were many pertinent calls that were intercepted that involve him. And the information from cooperators and the surveillance indicates that Mr. Williams was a part of the conspiracy to distribute over 20 pounds of methamphetamine in the San Diego area over the course of a year. There's a ten-year mandatory minimum in this case as well, your Honor, and the conservative estimate under the sentencing guidelines is that he would be facing a guideline range that would be approximately twice that, approximately twenty years.

Once again, this isn't a typical border bust case. This is someone who would not likely qualify for minor role. So, even if the Defendant accepted a deal from the United

States and got acceptance, he would still be facing a sentence of 15 to 20 years. He's not a low-level courier who doesn't know what's going on.

The evidence in this case is extremely strong, your Honor. In addition to the intercepted calls, there were a number of surveillances, including one incidence on February 22nd when agents personally observed Mr. Williams deliver approximately one to two pounds to methamphetamine to Victor Ramos, one of the co-defendants. Post arrest, the Defendant admitted as much and admitted crossing other loads for multiple drug organizations in Mexico, including the AFO and other Sinaloa drug cartels.

Your Honor, Mr. Williams is situated quite differently from the defendant that we had the hearing on early this morning, in that the bulk of his ties are to Mexico and he does have a criminal history, although some of it is dated. Mr. Williams' primary residence is in Tijuana, Mexico. That's where he lives, the agents estimate, approximately three-fourths to 80 percent of the time in Tijuana. He also resides during the week sometimes in Palm Springs, California, but the Government does not believe that that's his primary residence. And they know this because they would see -- they reviewed the TECS records, which show Mr. Williams' crossings, and the TECS records indicate that he crosses into the United States and then, a

day or two later, goes back to Mexico, stays in Mexico for five or six days, and then the next TECS event will be him coming into the United States for a day or two, and then back to Mexico.

They also know that he has a girlfriend in Mexico who we're not sure if he lives with her or not. But, he has strong ties to Mexico and is in the opposite situation as the earlier defendant in that he's primarily in Mexico and visits the United States.

His criminal history includes a number of convictions. Some of them are quite dated, going back to the 70's. But, they're numerous, and I think, when you take them together, even though they're somewhat dated, they suggest that Mr. Williams can't overcome the presumption in favor of detention, starting with vandalism in '78, an escape charge in '78, grand theft auto in '78, grand theft property in '79, grand theft in 1994, much more recent, and then another theft by force or invalid access card in 1998.

The Government understands that Mr. Williams is not a full-fledged member of the Shelltown 38 (phonetic) gang, but that he is an associate of theirs. In effect, Mr. Williams was the individual who was delivering the narcotics from Mexico to the gang in San Diego, where then they would then purchase it and then distribute it on further throughout the San Diego area.

Your Honor, I believe that that's a summary of the factors and the one that I'd like to highlight for your Honor is the Defendant's strong ties to Mexico. Employment's another factor. We understand that the Defendant is a martial arts instructor, but we don't have any information about any consistent or verifiable employment, and if it's going on based on where he's residing, it's the Government's belief that he's doing that in Mexico and not in the United States.

THE COURT: Okay. Mr. Colombo.

MR. COLOMBO: Thank you, your Honor. Your Honor, first, in regards to the mention of any wiretap conversations, I have sent a letter over to the U.S. Attorney's Office on November 7th requesting that, pursuant to 18 USC 2518, subdivision (9), that any applications or orders be turned over if the Government was going to rely upon any conversations.

Just mentioning the fact that there are conversations, I think would require the Government to disclose them if they want your Honor to rely upon the fact that there was conversations overheard that may have been consistent with drug trafficking. So, I would ask, your Honor, because the Government has not complied with subdivision (9) of 2518, that your Honor disregard any mention of the Government's reliance upon any phone

conversations that may have been recorded because they have not complied with that section of the statute, which requires them to disclose the applications and orders ten days prior to any hearing with which they would request the Court to rely upon.

THE COURT: All right, thank you.

MR. COLOMBO: In this case, your Honor, there is a condition or combination of conditions that could be set by the Court to insure Mr. Williams' presence at any future appearances. In regards to the nature and circumstances of the offense, I believe the Government was accurate in stating that this is a ten-year minimum mandatory case. In regards to the weight of the evidence, as your Honor is aware, it's the least important factor, I think, for two reasons.

One, because, at this point, I have absolutely no discovery. I have a one-count indictment, and I cannot dispute or refute any of the information that the Government has presented, and I think the second reason is more appropriate, and that's under 3142(j), the presumption of innocence still applies. So, the weight of -- I can't speak to the weight of the evidence, but it is the least important factor in this case.

In regards to Mr. Williams' history and characteristics, I believe that they all demonstrate that he

will make his future court appearances. He is 48 years old. He was born in Santa Monica, California. He's a United States citizen. He is a life-long resident of California.

Now, it is true, as the Government articulated, that for the past year, off and on, Mr. Williams has resided in Tijuana, and he does -- and the reason for that is because he was starting up a ultimate fighting school in training in mixed martial arts, because that's what he's been doing since 1975. In fact, that has been a major portion of his employment. He's trained different law enforcement organizations throughout the country since that in mixed martial arts.

In regards to his immediate family, all of his immediate family is living in Southern California. His parents are deceased. However, he has an older sister, Sharon, and two brothers, Jay and Jared, who both live in Southern California. All of his family ties, therefore, are in Southern California. His ex-wife is also living in Southern California, and in Palm Springs with his son. He has two children, Max, who is 19, and Donovan, who is 9, and they also live in Southern California.

In regards to any drug or alcohol abuse, he has no history of any drug or alcohol abuse, as the pretrial report indicates. He has no history of any mental illness.

In regards to his employment, as I indicated, he

is trained in mixed martial arts and does have a business both in Palm Springs and was starting one up in Tijuana training other fighters. And I would like to mention that, as I said, that he has been doing this for a significant period of time. And at one point, he was ranked in the UFC fighting arena as someone who was undefeated in the super heavyweight division. So, this is his employment.

But, in addition to that, he has worked for Yamaha as a motorcycle sales parts -- or selling motorcycle parts for the last 18 years, and it's been in connection with racing or super bike racing, and that's the two main sources of his income.

In regards to his criminal history, your Honor, although he does have a number of criminal contacts, the most recent of which is 1998 -- it's almost ten years old -- he's not on probation, parole or supervised release at the current time. And he -- as the probation report indicates, he's never had any failures to appear on any of those cases. So, that would indicate -- although he has had some contacts with the criminal justice system, there's no failures to appear or bench warrants that had been issued from any appearances that he had missed. So, I think that it cuts in favor of him making his court appearances, because he has a history of doing that in the past.

Your Honor, in this case, the conditions that I

would propose, after speaking to Mr. Williams' family and friends, would be $100,000 bond secured in the following ways. First, there would be a $75,000 bond secured by the real property of his friend, Chris Duran, who is also a super bike racer, and who works for FedEx as a manager for the last seven years, and he owns property and has approximately $75,000 in equity.

The other $25,000 would be secured by -- would be an unsecured portion secured by the signatures of the following three people: Jared Williams, Mr. Williams' brother, who is a city inspector in Hollywood. He's done that for many years. Unfortunately, he's not a homeowner when I spoke to him. He has always been a renter. The second person would be Mr. Williams' long-time friend, Tammy Ruiz, who also lives in Los Angeles. She's a member for R&N Company, which is a processing company and she's done that for the last seven years. And the final signature would be an additional friend, Trent Bowen, who is retired, but worked for 20 years as an armored car driver. All of these people live in Southern California. They are all close friends of Mr. Williams and they all, in addition to his brother, all indicated that they would be willing to sign for him, but they unfortunately do not own property. They're not in a position to post property.

So, I believe that the $100,000 as proposed is a

combination of conditions that would secure Mr. Williams' presence in court, and although it's not significant in the property -- the amount of property, the dollar amount, it is significant because there's four people that would be on the hook, including Mr. Williams' brother, if Mr. Williams did not make any of his court appearances.

In addition, your Honor, we would agree to home confinement with a condition of allowing him to work, as long as it's in the United States, and a condition that would include electronic monitoring, either active or passive, whatever the Court felt would be appropriate.

THE COURT: All right, thank you. Mr. Green.

MR. GREEN: I'd just like to make a couple points, if I may. I would note that he doesn't have failures to appear, but in 1978, the Defendant was convicted of escape. That was a misdemeanor. And that his two most recent contacts with law enforcement was when he was arrested for probation violations, both in 2002. So, it's not a case where it's a situation of full compliance. I'd also note that this Defendant, again, has basically a life in Mexico. He has a job there. He has employment there. His primary residence is there. In addition to the TECS crossings, I failed to mention that the agents for a time had a tracker on his vehicle, and it also confirmed that he was living primarily in Mexico. And something like active GPS allows

the Government to track where the Defendant is. But, if the Defendant tries to go to Mexico, it really doesn't do much to stop it from happening.

MR. COLOMBO: Your Honor, if I just may briefly respond. In regards to Mr. Williams having contact to Mexico, I don't think that it's so unusual that somebody who grew up in Southern California would have contacts in Mexico, and I don't think it would -- it's a much different situation than somebody who travels abroad or studies abroad for a year or so, has family over there and may have been employed over there. It doesn't necessarily mean that they are going to flee to that area when they are a U.S. citizen, and all of their family and friends live in the United States, aside from one person, Mr. Williams' girlfriend, if what the Government said is correct. But, I don't believe that that is, given the condition or combination of conditions that the Defense has proposed in this case, that his contacts in Mexico are so over-whelming that he would basically just, I guess, put his brother and all of his friends on the hook to flee into Mexico.

THE COURT: All right, thank you. Mr. Williams, the Government has moved to detain you based on risk of flight. In light of the drugs and the quantities involved in this case and the seriousness of the offense, the Government has the benefit of a presumption that you pose a

risk of flight due to the sentence that you may be facing. The weight of the evidence in the case, I think, is relatively strong, although that's the least important factor for me to consider. It's therefore your burden to overcome that presumption by showing the other factors that I need to consider would indicate that there would be conditions I could set that would indicate that you're not a risk of flight.

I think this is a very close call on this case. Weighing in your favor certainly is the fact that you're a U.S. citizen and that you have family ties here. However, on the other side of the balance fo that equation, there seems to be a criminal history, although slightly dated, that also indicates probation violations, that your employment is self-employment that doesn't require that you be here in the United States, that in fact you have that employment in Mexico, that you're currently residing there, and that your closest personal relationship is with someone in Mexico.

On the balance, considering those factors against the presumption, I don't think that your counsel has overcome the presumption in this case. Therefore, I am going to grant the Government's motion to detain without prejudice. If factors should change or new information come to light, you can renew your motion. If you have a

question, why don't you talk to Mr. Colombo.

(Pause.)

MR. COLOMBO: Thank you, your Honor.

THE COURT: All right, thank you, and that's all for today.

(Proceedings concluded.)

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Carol Abbott 12/3/07
Transcriber Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

L.L. Francisco
L.L. FRANCISCO, President
Echo Reporting, Inc.